UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
DANIEL WILLIAMS,

                       Plaintiff,          **MEMORANDUM AND ORDER**

- against -          16-CV-1296 (RRM) (RER)

CAPTAIN DIAZ, CAPTAIN KOUROUKLIS,
CAPTAIN GLOVER, MS. JOHNSON, JOHN
DOE, and JOHN DOE

                       Defendants.
------------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, Chief United States District Judge.

      On March 1, 2016, plaintiff Daniel Williams, then an inmate at Nassau County Correctional Center ("NCCC"), commenced this *pro se* action pursuant to 42 U.S.C. §1983, seeking five million dollars in damages for an incident which allegedly occurred while he was incarcerated on Rikers Island.  (*See* Compl. (Doc. No. 1).)  Captain Diaz, Captain Glover, Captain Kourouklis, and Assistant Deputy Warden Johnson (collectively, "Defendants") now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, principally arguing that Williams failed to exhaust his administrative remedies before commencing this action as required by the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  Williams has not opposed that motion.  For the reasons set forth below, Defendants' motion is granted and this action is dismissed without prejudice.

## BACKGROUND

      The following facts are drawn from Defendants' Rule 56.1 Statement ("Def. 56.1 Stmt."). Since Williams has not filed a Rule 56.1 counterstatement or any other opposition papers disputing Defendants' Rule 56.1 Statement, the facts set forth therein are deemed admitted for purposes of the motion.  *See* Local Civil Rule 56.1(c); *Giannullo v. City of New York*, 322 F.3d

139, 140 (2d Cir. 2003) ("If the opposing party … fails to controvert a fact … set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

This action relates to an incident that took place on January 13, 2016, while Williams was in the custody of the New York City Department of Correction ("DOC") and housed in the Otis Bantum Correctional Center ("OBCC"), a facility on Rikers Island. (Def. 56.1 Stmt. ¶ 3.). At approximately 2:30 in the morning, Williams was given direct orders to depart a cell in the intake area of the jail. (*Id*. ¶ 9.) He refused. (*Id*. ¶ 10.) Eventually, defendant Johnson, an Assistant Deputy Warden, informed defendant Captain Kourouklis, who assembled an "extraction team." (*Id*. ¶¶ 11–12.)

In the course of extracting Williams from the cell, Kourouklis twice sprayed a chemical agent, MK-9, in Williams' face. (*Id*. ¶¶ 15–17.) Williams was then escorted from the cell to a shower area for decontamination. (*Id*. ¶ 18.) However, that shower only provided hot water which, according to Williams, was too hot to permit him to rinse the MK-9 from his eyes. (*Id*. ¶ 19.) After an hour, Williams was brought to the OBCC clinic for medical evaluation. (*Id*. ¶ 20.) Although Williams complained that he had not been properly decontaminated, a doctor diagnosed the redness in his eyes as conjunctivitis and determined that he did not need any treatment. (*Id*. ¶¶ 21–22.)

On March 1, 2016, Williams commenced this action by placing a form § 1983 complaint in the prison mailbox at NCCC, the Nassau County jail to which he had been transferred. (Compl. at 7.)[1] In that pleading, Williams claims that his Eighth Amendment rights were violated through, among other things, deliberate indifference to his serious medical needs. (*Id*. ¶ 6.) Williams seeks $5 million in damages. (*Id*. ¶ 7.)

---

[1] Page numbers refer to those assigned by the Court's Electronic Case Filing ("ECF") System.

Williams' pleading attaches a copy of a written statement that he prepared for investigators from DOC's Investigation Division on January 15, 2016 – two days after the incident. (*Id.* ¶ 8.) However, the pleading does not allege whether Williams filed a grievance at OBCC, or whether he exhausted his remedies.

Defendants now move for summary judgment, principally alleging that this § 1983 action is barred by the PLRA because Williams has not exhausted his administrative remedies. In support of their motion, Defendants have filed a declaration executed by Assistant Corporation Counsel Kaitlin Fitzgibbon (the "Fitzgibbon Declaration"), which attaches excerpts from the transcript of Williams' March 27, 2019, deposition. (Fitzgibbon Declaration, Ex. B (Doc. No. 53-2).) During that deposition, Williams testified that he filed a written grievance within days after the incident. (*Id.* at 70.) Williams admitted when he received no response to his grievance, he did not request a formal hearing before the Inmate Grievance Resolution Committee ("IGRC"). (*Id.*; Def. 56.1 Stmt. ¶ 27.) Rather, he immediately filed this § 1983 action. (Fitzgibbon Declaration, Ex. B, at 71.) He implied that he took no further action with respect to his grievance because he was relying on the IRGC to contact him. (*Id.* at 71.) He was transferred to NCCC "probably like a month" after the incident. (*Id.* at 30.)

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a summary judgment motion, the court must not "weigh the evidence but is instead required to view the

3

evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)).

Once the movant has demonstrated that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law, then "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in *Matsushita*.). However, there must exist more than mere "metaphysical doubt as to the material facts" to defeat a summary judgment motion. *Id.* at 586. Instead, the non-moving party must present "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256. Only disputes over material facts "that might affect the outcome of the suit under the governing law" will properly preclude the entry of summary judgment. *Id.* at 248; *see also Matsushita,* 475 U.S. at 586. The same standards for summary judgment apply where, as here, the non-movant is proceeding *pro se*, although "the *pro se* litigant should be given special latitude in responding to a summary judgment motion." *Williams v. Savory*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015) (quoting *Knowles v. N.Y. City Dep't of Corr.*, 904 F. Supp. 217, 220 (S.D.N.Y. 1995)); *see also Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) ("[S]pecial solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment.").

"[W]hen a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1–800 BEARGRAM Co.*, 373 F.3d 241, 242 (2d Cir. 2004); *Amaker v. Foley*, 274

4

F.3d 677, 681 (2d Cir. 2001) ("[W]hen a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial ...."). Courts will grant unopposed motions for summary judgment "so long as [movants] have met their threshold burden of production." *Washington v. City of New York*, No. 05–CV–8884 (LAP), 2009 WL 1585947 at *5, (S.D.N.Y. June 5, 2009) (citation omitted).

## DISCUSSION

The PLRA states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and includes suits for monetary damages even though such damages are not available as an administrative remedy, *see Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding exhaustion of administrative remedies is required "regardless of the relief offered through administrative procedures"). Although the exhaustion requirement is not jurisdictional, it is "mandatory," *Ross v. Blake*, 136 U.S. 1850, 1856 (2016), meaning "a court must enforce the rule if a party 'properly raise[s]' it." *See Fort Bend Cty., Texas v. Davis*, 139 U.S. 1843, 1849 (2019) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (*per curiam*)).

The PLRA requires "proper exhaustion" of all remedies, which "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the

5

merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal quotation marks omitted) (emphasis in original). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)). Under the PLRA, "the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones… [A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1858. Unavailability of remedies is an affirmative defense. *See Macias v. Zenk*, 495 F.3d 37, 41 (2d Cir. 2007) ("Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact available to the prisoner."); *see also Williams v. Correction Officer Priatno*, 829 F.3d 118, 123–24 (2d Cir. 2016) (citing *Johnston v. Maha*, 460 F. App'x 11, 15 (2d Cir. 2012) (referring to the "unavailability defense to nonexhaustion").

It is well established that DOC has an Inmate Grievance Resolution Program ("IGRP"), a five-step grievance process which allows inmates to seek resolution of issues relating to aspects of his or her confinement. *See* DOC Directi*ve 3375R–A, § IV(B); see Leneau v. City of New York*, No. 16-CV-0893 (RA), 2018 WL 583120 (S.D.N.Y. Jan. 26, 2018)*; Mena v. City of New York*, No. 12-CV-28 (CM), 2014 WL 2968513, at *3 (S.D.N.Y. June 27, 2014). To satisfy the IGRP grievance procedure, a plaintiff must:

> (1) file an informal complaint with the Inmate Grievance Resolution Committee ("IGRC"); (2) in the event that informal resolution is not reached within five days, request a formal hearing before the IGRC; (3) appeal any unfavorable decision by the IGRC to the Commanding Officer; (4) appeal any unfavorable decision by the Commanding Officer to the Central Office Review

6

>   Committee; and (5) appeal any unfavorable decision from the Central Office Review Committee to the New York City Board of Correction.

*Girodes v. City of New York*, No. 17-CV-6789 (RWS), 2018 WL 3597519, at *3 (S.D.N.Y. July 26, 2018) (quoting *Myers v. City of New York*, No. 11-CV-8525 (PAE), 2012 WL 3776707, at *4 (S.D.N.Y. Aug. 29, 2012)). "It is well-settled … that '*even when an inmate files a grievance and receives no response*, he must nevertheless properly exhaust all appeals before his grievance is considered exhausted.'" *George v. Morrison-Warden*, No. 06-CV-3188 (SAS), 2007 WL 1686321, at *3 (S.D.N.Y. June 11, 2007) (*Bligen v. Griffen*, No. 06-CV-4400 (LBS), 2007 WL 430427, at *2 (S.D.N.Y. Feb. 8, 2007) (emphasis added in *George*).

Once defendants have met their initial burden of demonstrating that a grievance process exists, … a plaintiff bears the burden of 'demonstrat[ing] that other factors ... rendered a nominally available procedure unavailable as a matter of fact.'" *White v. Velie*, 709 F. App'x 35, 38 (2d Cir. 2017) (summary order) (quoting *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015)). The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. *Macias*, 495 F.3d at 41.

In this case, Williams clearly failed to meet the PLRA's exhaustion requirement before filing with this Court. Williams engaged in only the first step of the process by filing his grievance two days after the incident, well within the ten-day window. (Def. 56.1 Stmt. ¶ 18.) When he did not get a response within five days, he should have proceeded to the next step of the process and requested a formal hearing. However, he failed to do so and did not complete the

7

remaining four steps of the process. Since he failed to complete all five steps of the IGRP, he did not exhaust his administrative remedies. *See Houston v. Horn*, No. 09-CV-801 (DLC), 2010 WL 1948612, at *6 (S.D.N.Y. May 13, 2010).

In this case, Defendants have squarely raised the non-exhaustion issue. They have provided the Court with excerpts from Williams' own deposition, in which he admits that he did not complete the five-step process. Since the exhaustion rule is mandatory, *Ross*, 136 U.S. at 1856 (2016), and since Defendants properly raised the non-exhaustion defense, the Court "must enforce the rule." *See Fort Bend Cty., Texas v. Davis*, 139 U.S. 1843, 1849 (2019) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (*per curiam*)).

Williams, who has not opposed Defendants' motion for summary judgment, has not offered any explanation for his failure to exhaust his administrative remedies. He has not adduced any evidence suggesting that the IGRP was, in fact, unavailable or that Defendants' own actions inhibited his ability to avail himself of the grievance process. To the contrary, he admits that he did not complete the grievance process because he was errantly relying on the IRGC to contact him. (Fitzgibbon Declaration, Ex. B., at 71.) While the record establishes that he was transferred to NCCC "probably like a month" after the incident, (*id.* at 30), this transfer occurred well after he should have proceeded to step two of the IGRP. Accordingly, his transfer to NCCC was not the cause of his failure to complete the five-step process and did not render his administrative remedies unavailable.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment, (Doc. No. 51), is granted, and the case is dismissed without prejudice. *See Scott v. Kastner-Smith*, 298 F. Supp. 3d 545, 556 (W.D.N.Y. 2018) ("Generally, a dismissal for failure to exhaust

administrative remedies is without prejudice.")  The Clerk of Court is directed to enter judgment in favor of Defendants and against plaintiff Williams, to mail a copy of the judgment and this Memorandum and Order to Williams, to note that mailing on the docket sheet, and to close this case.

                                                                               SO ORDERED.

Dated: Brooklyn, New York                                         *Roslynn R. Mauskopf*
       September 28, 2020

                                                                                _____
                                                                                 ROSLYNN R. MAUSKOPF
                                                                                 Chief United States District Judge